UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**LORRAINE FRANCIS GOZZETTI**         **CASE NO.  6:19-CV-01533**

**VERSUS**                            **JUDGE JUNEAU**

**COMMISSIONER OF SOCIAL              MAGISTRATE JUDGE HANNA
SECURITY**

### REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be reversed and remanded.

### Administrative Proceedings

Claimant, Lorraine Francis Gozzetti, fully exhausted her administrative remedies before filing this action in federal court. She filed an application for disability insurance benefits, alleging disability beginning on June 17, 2016. Her application was denied. (Rec. Doc. 11-1, p. 81). She then requested a hearing, which was held on October 19, 2018 before Administrative Law Judge Rowena DeLoach. (Rec. Doc. 11-1, p. 30-61). The ALJ issued a decision on December 27, 2018, concluding that Claimant was not disabled within the meaning of the Social Security Act from the claimed disability onset date through the date of the decision. (Rec. Doc. 11-1, p. 15-24). Claimant requested that the Appeals Council review the ALJ's decision, but the Appeals Council found no basis for review. (Rec. Doc. 11-1, p. 6).

Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of judicial review.[1] Claimant then initiated this action, seeking review of the Commissioner's decision.

## Summary of Pertinent Facts

Claimant was born on May 8, 1970. (Rec. Doc. 11-1, p. 149). She was 46 years old on the alleged disability onset date and 48 years old at the time of the ALJ's decision. She testified that she has obtained a GED and last worked as a convenience store manager. (Rec. Doc. 11-1, p. 37-38). She alleged that she has been disabled since June 17, 2016 due to rheumatoid arthritis, fibromyalgia, bursitis, tendonitis, symbositis, carpal tunnel syndrome, depression, ulcers, bad knees, lupus, fatigue, rotator cuff pain, 3 bulging discs and 2 degenerative discs in neck, anxiety, trigger thumbs, mental fog, elbow pain, swelling in ankles, hands and feet, shortness of breath, and morbid obesity. (Rec. Doc. 11-1, p. 175).

She testified at the hearing that she stopped working because she was in "so much pain" and had "no mental clarity." (Rec. Doc. 11-1, p. 39). She testified that she suffers from constant pain due to rheumatoid arthritis and fibromyalgia particularly in her hands, feet, and knees. She testified that she has trouble sleeping due to the pain and spends most of her days in a recliner with her legs elevated. (Rec.

---

[1]   *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005).

Doc. 11-1, p. 40-41; 45). She further testified that she suffers from depression and anxiety, which causes her to cry a lot; although, she does not take any medications or receive counseling for these issues. (Rec. Doc. 11-1, p. 41-42). She is obese. She underwent a gastric sleeve surgery after filing her claim and has since reduced her weight from 336 pounds to 262 pounds. (Rec. Doc. 11-1, p. 42-43). Though surgeries had been recommended for her knees, she cannot have knee surgery until she loses weight. (Rec. Doc.11-1, p. 45). She stated that her medications cause memory problems. (Rec. Doc. 11-1, p. 48). She testified that she also suffers from restrictive airway disease when she is around chemicals, that she takes Ambien to sleep, and that she uses a CPAP machine. (Rec. Doc. 11-1, p. 50-53).

Based on Claimant's medical records, as well as testimony from vocational expert, Leonard Francois, the ALJ found that Claimant met the insured status requirements; that she had not engaged in substantial gainful activity since the alleged onset date; that she suffered from several severe impairments, none of which met or medically equaled the severity of a listed impairment; that she had the residual functional capacity to perform sedentary work; and that, as such, when considering her age, education, and work experience, there existed a significant number of jobs in the national economy that she could perform. (Rec. Doc. 11-1, p. 15-24).

Claimant now seeks reversal of the Commissioner's adverse ruling, on the sole grounds that the ALJ's RFC determination is not supported by substantial

evidence, because she did not properly weigh the opinion of Claimant's treating physician, Dr. Nancy Walker.

## Analysis

### A. Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[2] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[4]

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[5] A court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[6] Conflicts in the evidence[7] and credibility assessments[8] are for the

---

[2] *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).
[3] *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).
[4] *Id.* (citations omitted).
[5] 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173.
[6] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022.
[7] *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).
[8] *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

Commissioner to resolve, not the courts. Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[9]

**B.     <u>Entitlement to Benefits</u>**

The Disability Insurance Benefit program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[10] A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[11] A claimant is disabled if his physical or mental impairment or impairments are so severe that he is unable do his previous work and considering his age, education, and work experience, cannot participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether

---

[9] *Id.*
[10] See 42 U.S.C. § 423(a). See, also, *Smith v. Berryhill*, 139 S.Ct. 1865, 1772 (2019).
[11] 42 U.S.C. § 1382c(a)(3)(A).

such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[12]

## C. Evaluation Process and Burden of Proof

A sequential five-step inquiry is used to determine whether a claimant is disabled. The Commissioner must determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work.[13]

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity[14] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[15] The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[16]

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can

---

[12] 42 U.S.C. § 1382c(a)(3)(B).
[13] 20 C.F.R. § 404.1520.
[14] 20 C.F.R. § 404.1520(a)(4).
[15] 20 C.F.R. § 404.1545(a)(1).
[16] 20 C.F.R. § 404.1520(e).

6

perform other substantial work in the national economy.[17] This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[18] If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[19] If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[20]

**D.    The ALJ's Findings and Conclusions**

In this case, the ALJ determined at step one that Claimant has not engaged in substantial gainful activity since June 17, 2016. (Rec. Doc. 11-1, p. 17). This finding is supported by substantial evidence in the record.

At step two, the ALJ found that Claimant has the following severe impairments: rheumatoid arthritis, fibromyalgia, osteoarthritis affecting both knees, obesity, and restrictive pulmonary function with reduced forced vital capacity. (Rec. Doc. 11-1, p. 17). This finding is supported by substantial evidence in the record. The ALJ further evaluated whether Claimant's depression and anxiety caused more than minimal limitation on her ability to perform basic mental work activities and was therefore nonsevere. The ALJ relied upon medical records evidencing

---

[17]   *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).
[18]   *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).
[19]   *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302.
[20]   *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

complaints and prescription medication for depression and anxiety, but that Claimant had not undergone any mental status examination to corroborate the diagnoses and that she actively resisted any intervention such as psychiatric treatment and taking medications, including Xanax. Because Claimant's medically determinable mental impairments did not cause more than "mild limitation in any of the functional areas assessed under 20 CFR, Part 404, Subpart P, Appx. 1 (Paragraph B criteria"), the ALJ determined Claimant's mental impairments were nonsevere. (Rec. Doc. 11-1, p. 18-19). Claimant does not challenge the ALJ's findings at step two. Claimant's medical records support the ALJ's conclusions. See e.g. Rec. Doc. 11-2, p. 384, wherein Dr. Walker noted that Claimant continued to refuse psych treatment. See also p. 385 wherein Claimant stated that her weight was the crux of her depression. Notably, as further discussed below, Claimant subsequently underwent a gastric sleeve procedure in 2018 and by the time of the ALJ hearing had lost 74 pounds.

At step three, the ALJ found that Claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Rec. Doc. 11-1, p. 19). Claimant does not challenge this finding.

The ALJ found that Claimant has the residual functional capacity to perform sedentary work with occasional pushing, pulling and reaching overhead with the left

arm, and with occasional stair/ramp climbing, balancing, stooping, kneeling, crouching, and crawling. (Rec. Doc. 11-1, p. 20). Claimant challenged this finding.

At step four, the ALJ found that Claimant is unable to perform any past relevant work. (Rec. Doc. 11-1, p. 23). Claimant did not challenge this finding.

At step five, the ALJ found that, considering her RFC, age, education, and work experience, Claimant is able to perform sedentary jobs, such as documents specialist, of which Mr. Francois testified there were 73,000 available in the national economy, and press cutter/paster, of which there were 4,000 available jobs in the national economy. Because Claimant challenges the ALJ's RFC finding, she inherently challenges the ALJ's findings at step five.

### E.   The Allegations of Error

Claimant contends that the ALJ erred by failing to weigh the opinion of her treating physician, Dr. Nancy Walker.

### F.   Did the ALJ Properly Weigh the Medical Opinions?

Claimant argued that the ALJ failed to attribute the proper weight to her treating physician, Dr. Nancy Walker, when determining that Claimant was capable of performing sedentary work.

For applications filed on or after March 27, 2017, the opinions of treating sources are no longer given controlling weight.[21] Because Claimant filed her

---

[21]   See 20 C.F.R. § 404.1520c.

9

application for benefits before March 27, 2017, however, the pre-amendment version of the rule applies here.[22] The applicable rule explains how medical opinions are to be weighed.[23] The ALJ must evaluate all of the evidence in the case and determine the extent to which medical source opinions are supported by the record. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with. . . other substantial evidence."[24] However, "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."[25] When rejecting the medical opinion of a treating physician, the ALJ must provide an explanation supported by good cause.[26] Even when a treating physician's medical opinions are not given controlling weight, the statute requires that they must be weighed in light of the length of treatment, nature and extent of treatment, supportability, consistency, specialization, and any other relevant factors. If an ALJ declines to give controlling weight to a treating doctor's opinion, he may give the opinion little

---

[22] See 20 C.F.R. § 404.1527 ("For claims filed. . . before March 27, 2017, the rules in this section apply. For claims filed on or after March 27, 2017, the rules in § 404.1520c apply.").
[23] 20 C.F.R. § 404.1527(c), § 416.927(c), SSR 96-2p, SSR 96-5p.
[24] 20 C.F.R. § 404.1527(d)(2).
[25] *Martinez v. Chater*, 64 F.3d at 175-75 (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).
[26] See *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000).

10

or no weight – but only after showing good cause for doing so.[27] Good cause may be shown if the treating physician's opinion is conclusory, unsupported by medically acceptable clinical laboratory diagnostic techniques, or is otherwise unsupported by the evidence.[28]

In this case, the ALJ did not attribute any weight to Dr. Walker's medical source statement, finding that Dr. Walker's assessment was inconsistent with her own treatment notes. (Rec. Doc. 11-1, p. 7). The Court finds that the ALJ failed to properly weigh Dr. Walker's opinion. In her October 15, 2018 PRFCQ, Dr. Walker provided the following responses:

- Claimant's diagnoses were rheumatoid arthritis ("RA"), fibromyalgia, sleep apnea, osteoarthritis of knees, TMJ, spondylosis of spine, GERD, anxiety/depression, and morbid obesity.

- Claimant's prognosis was poor, and she had failed treatment for rheumatoid arthritis in the past.

- Clinical findings had included swelling of the right hand, third finger, and bilateral ankles, altered gait due to pain.

---

[27] *Thibodeaux v. Astrue*, 324 Fed. App'x 440, 443-444 (5th Cir. 2009).

[28] *Id.*

11

- Medications were Humira, with a noted side effect of immunocompromise, and Flexeril, with a noted side effect of drowsiness.

- Impairments were expected to last at least twelve months.

- Depression and anxiety were emotional factors affecting Claimant's physical condition.

- Claimant was incapable of even "low stress" jobs, because she had a large amount of pain still uncontrolled.

- Claimant could sit or stand for fifteen minutes at a time before needing to switch positions. She could sit and stand/walk about 2 hours during an 8-hour day. She would need four unscheduled breaks of 20 minutes each during a work day. She did not require an assistive device for walking.

- Claimant's legs should be elevated two feet for three to four hours.

- Claimant could occasionally carry 10 pounds and frequently look down and up, turn head, and hold her head in a static position. She could rarely twist, crouch/squat, or climb stairs, and never stoop or climb ladders. She had no significant limitations with reaching, handling or fingering.

- She was expected to be absent from work about four days per month due to her impairments.

(Rec. Doc. 11-2, p. 377-380).

Dr. Walker's medical records evidence routine treatment between 2015 and 2018. Dr. Walker noted Claimant's issues with RA, fibromyalgia, osteoarthritis, depression, and obesity. Dr. Walker's physical exam at all visits found that Claimant had a normal gait with 5/5 muscle strength in all major muscle groups. The notes further indicate a few incidents of left shoulder pain, foot pain, and thumb pain, each of which was treated with injections and appear to cause no ongoing problems. (4-60; 110-11).

Claimant treated with specialists for her RA and osteoarthritis in her knees. "The opinion of a specialist generally is accorded greater weight than that of a non-specialist."[29] Further, a condition that can be controlled or remedied by medication or therapy cannot serve as a basis for a finding of disability.[30] However, "[a]lthough a medical condition that can be remedied by surgery or medication is not disabling, 20 C.F.R. §§ 404.1530(b) and 416.930(a), the Secretary must first determine that the reason for declining treatment was not justified by the inability to pay or ineffectiveness of the treatment."[31] "When a claimant cannot afford prescribed treatment or medicine and can find no way to obtain it, 'the condition that is disabling in fact continues to be disabling in law.'"[32]

---

[29] *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).
[30] *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir.1988).
[31] *Wingo v. Bowen*, 852 F.2d 827, 831 (5th Cir. 1988).
[32] *Id.*, quoting *Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir.1986).

With regard to Claimant's RA, her medical records indicate ongoing treatment at the Rheumatology Clinic of Opelousas since 2014. According to the records, which begin in 2017, Claimant was diagnosed with RA in 2014 and treated with Dr. Malin through 2017, when she encountered insurance difficulties. She had stopped taking medications in the past also due to insurance difficulties. She had since begun Humira, with Plaquenil, but at some point, she had stopped taking all of her medications since she did not want to take medications she did not need. Her RA was noted as stable and well controlled on multiple occasions, and in the most recent record of July 2018. (Rec. Doc. 11-2, p. 203-06). NP April Woodrow, whose physical exams and documentation were extensively detailed, suggested that Claimant's soft tissue complaints were related to osteoarthritis and fibromyalgia, for which Ms. Woodrow encouraged working on underlying etiologies with restorative sleep, treating depression and anxiety, and working on a healthier lifestyle with gentle exercise. Physical therapy was often recommended, but Claimant was unable to find anyone for this. (Rec. Doc. 11-2, p. 118-20; 194-232; 313-26). As of February 2018, Claimant indicated to Dr. Walker that she was satisfied with her rheumatology care. (Rec. Doc. 11-2, p. 381).

With regard to the osteoarthritis in her knees, Claimant treated with Dr. Otis Drew, orthopedist, who gave her several injections. In November 2016, Dr. Drew was not prepared to offer surgery due to her age of 46 and her weight. He noted she

may feel significantly better after weight loss surgery and may not require surgery for her knees. (Rec. Doc. 11-2, p. 127-130; 349). In May 2017, Dr. Drew noted there was nothing else he could do until she lost at least 100 pounds. (*Id*. at p. 125-26)

With regard to Claimant's fibromyalgia and generalized complaints of pain, the ALJ gave no weight to Dr. Walker's PRFCQ responses concluding that Claimant's pain had never been controlled, finding that Dr. Walker's medical records did not corroborate the presence of any objective signs except a report of mild swelling to the legs. (Rec. Doc. 11-1, p. 21-22).

Pain can constitute a disabling impairment,[33] but pain is disabling only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment.[34] Mild or moderate pain is not disabling. Furthermore, subjective complaints, such as complaints of pain, must be corroborated by objective medical evidence.[35] While an ALJ must take into account a claimant's subjective allegations of pain in determining residual functional capacity, the claimant must produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged.[36] The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain does not take precedence over

---

[33] *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985).
[34] *Falco v. Shalala,* 27 F.3d at 163; *Selders v. Sullivan*, 914 F.2d at 618-19.
[35] *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).
[36] *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989).

15

conflicting medical evidence.[37] The absence of objective factors can justify the conclusion that a witness lacks credibility.[38]

The ALJ found that Dr. Walker's treatment records do not indicate a change in medications or any other objective evidence of disabling pain; however, contrary to the ALJ's findings, the medical records show that Claimant has been prescribed numerous medications in differing amounts throughout the course of documented treatment. (See e.g. Rec. Doc. 11-2, p. 118-20; 194-232; 313-26.). Further, when medications failed to provide relief for her osteoarthritis, she underwent several injections, which is an objective indication of ongoing pain. (See e.g. records *supra*, as well as Rec. Doc. 11-2, p. 127-130; 349). Likewise, records from the Rheumatology Clinic show objective signs of synovitis, joint swelling, and tenderness. (Rec. Doc. 11-2, p. 118-19; 215-19.) Although the ALJ noted a report of mild swelling to the legs as the only objective sign of pain, the medical records actually show that Claimant at times described her knee pain as 10/10 with joint stiffness, swelling, redness, warmth and myalgias. (Rec. Doc. 11-2, p. 326). Physical examinations often revealed diffuse soft tissue tenderness throughout exam and bilateral knee crepitus upon range of motion. (e. g. Rec. Doc. 11-2, p. 195; 203; 210 *inter alia*). The ALJ failed to consider the foregoing facts before attributing no

---

[37] *Id*.
[38] *Dominguez v. Astrue*, 286 Fed. App'x 182, 187 (5th Cir. 2008), citing *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988) (*per curiam*).

16

weight to Dr. Walker's opinions. Therefore, the Court finds that the ALJ committed error.

## Conclusion and Recommendation

For the foregoing reasons, this Court recommends that the Commissioner's decision be REVERSED and REMANDED with the instruction to re-evaluate the weight to be given to the opinions of Dr. Walker.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[39]

---

[39] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).

Signed in Lafayette, Louisiana, this 8th day of September, 2020.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE